UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| YVONNE KUBISZEWSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:17-CV-565 JD |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff Yvonne Kubiszewski appeals the denial of her claim for Social Security Disability Insurance Benefits. For the following reasons, the Court remands this matter to the Commissioner for further proceedings consistent with this opinion.

**BACKGROUND**

Ms. Kubiszewski filed her initial application for benefits on October 15, 2013, alleging disability beginning July 20, 2012. Her application was denied initially, on reconsideration, and following an administrative hearing in November 2015 at which she was represented by counsel. At that hearing, the ALJ heard testimony from Ms. Kubiszewski and vocational expert ("VE") Dale Thomas. The ALJ found that Ms. Kubiszewski had some severe impairments but could still perform certain jobs available in the national and regional economy, and she was therefore not disabled within the meaning of the Act. See 20 C.F.R. § 416.920(g). The Appeals Council denied review of the ALJ decision, making the ALJ's decision the final determination of the Commissioner.

## STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The Court will affirm the Commissioner's denial of disability benefits if it is supported by substantial evidence. *Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court will affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial-evidence determination, the Court does not reweigh evidence, resolve conflicts, decide questions of credibility or substitute the Court's own judgment for that of the Commissioner. *Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003). The Court does, however, critically review the record to ensure that the ALJ's decision is supported by the evidence and contains an adequate discussion of the issues. *Id.* The ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection; she may not ignore an entire line of evidence that is contrary to her findings. *Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must also "articulate at some minimal level [her] analysis of the evidence" to permit informed review. *Id.* Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, she must provide a "logical bridge" between the evidence and her conclusions. *Terry v. Astrue,* 580 F.3d 471, 475 (7th Cir. 2009).

# DISCUSSION

Disability benefits are available only to individuals who are disabled under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations contain a five-step test to ascertain whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4). These steps require the Court to sequentially determine:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

20 C.F.R. § 404.1520(a)(4); *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, the Commissioner acknowledges disability. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, the ALJ must assess the claimant's residual functional capacity ("RFC") between steps three and four. The RFC is then used to determine whether the claimant can perform past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the burden of proof in steps one through four, while the burden shifts to the Commissioner at

step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Ms. Kubiszewski presents several arguments for remand. Most broadly, she argues that the ALJ's RFC determination is not supported by substantial evidence. Ms. Kubiszewski also argues that the ALJ improperly evaluated her subjective complaints, especially with regard to Ms. Kubiszewski's receipt of unemployment benefits. In addition, Ms. Kubiszewski suggests that the VE's testimony as to stooping is incompatible with the RFC, thereby requiring an award of benefits. The Court will address these arguments in turn, but will leave the issue of stooping for the ALJ's reconsideration on remand.

**A.      RFC Not Supported By Substantial Evidence**

Ms. Kubiszewski attacks the ALJ's RFC as unsupported by substantial evidence on several fronts, the most significant of which is Ms. Kubiszewski's argument that the ALJ improperly discounted the opinion of her treating physician, Dr. Jason Hix, who placed her on a permanent work restriction of no twisting. (R. 510). The ALJ assigned "little weight" to this medical opinion, as the ALJ found it to be "generally inconsistent with the notations regarding the claimant's generally unremarkable range of motion and with the extent of her daily activities, such as her ability to cook, clean, wash dishes, and perform laundry …." (R. 24-25).

An RFC assessment is to be based upon consideration of all relevant evidence in the case record, including medical evidence. SSR 96-5p. With respect to medical evidence, the ALJ must give controlling weight to a treating physician's opinion if it is well supported by medically acceptable diagnostic techniques and it is not inconsistent with other substantial evidence of record. 20 C.F.R. § 404.1527(c); *Elder*, 529 F.3d at 415.[1] When the treating physician's opinion

---

[1] The applicable regulations have since been amended, but those amendments do not apply here because Ms. Kubiszewski filed her claim prior to March 27, 2017. 20 C.F.R. § 404.1520c.

4

is not entitled to controlling weight, however—such as where it is not supported by the objective medical evidence, where it is inconsistent with other substantial evidence in the record, or where it is internally inconsistent, *see Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000) (citing *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir.1995))—then the ALJ should move on to assessing the value of the opinion in the same way she would any other medical evidence. *See* 20 C.F.R. § 404.1527(c)(2).

Assessing what weight to afford the opinion depends on a number of factors, such as the examining relationship (with more weight given to an opinion of an examining source); the treatment relationship, which includes the length, frequency, and nature of the treatment; the degree to which the source presents relevant evidence to support the opinion; the consistency of the source's opinion with the other evidence; whether the source specializes in an area related to the individual's impairment; and any other factors tending to support or refute the opinion. 20 C.F.R. § 404.1527(c); *Elder*, 529 F.3d at 415. If the ALJ discounts the treating physician's opinion after considering these factors, her decision must stand as long as she "minimally articulated [her] reasons—a very deferential standard that we have, in fact, deemed lax." *Elder*, 529 F.3d at 415 (citing *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)). Nevertheless, the ALJ must offer "good reasons" for discounting a treating physician's opinion. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011).

As stated above, the ALJ discredited Dr. Hix's opinion that Ms. Kubiszewski could not twist based in part on evidence in the record that documented her as having a "generally unremarkable range of motion." (R. 24). Here, however, the ALJ formulated her opinion based on only those clinical observations that backed her RFC determination, while neglecting to mention evidence from the same records that supported Ms. Kubiszewski's allegations. For

example, elsewhere in her opinion, the ALJ notes that Ms. Kubiszewski twice presented with either a "normal range of motion" or a "normal spinal range of motion" in 2013 (R. 23-24, 292, 542). Yet the medical record also contains a number of other doctors' opinions suggestive of Ms. Kubiszewski's limited spinal range of motion. For example, the record includes multiple episodes in 2015 in which Ms. Kubiszewski presented to Dr. Verlin Houck with complaints of pain "with any range of motion in her trunk." (R. 569, 586). Furthermore, Dr. David Beatty, another treating physician, expressly adopted Dr. Hix's permanent twisting limitation on several occasions. (R. 509, 511-12). The ALJ made no mention of this evidence supporting the notion that Ms. Kubiszewski's spinal range of motion was indeed impaired and that she could not twist. Thus, the ALJ impermissibly engaged in "cherry picking" facts from the medical record that supported her finding while ignoring many others. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (An ALJ cannot "cherry-pick" facts that support a finding of non-disability while ignoring evidence that points to a disability finding.); *see also Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015) (remanding where ALJ failed to explain how treating physician's opinion that claimant could not bend or twist was not supported by the record, which contained other doctor's opinions suggestive of claimant's inability to bend or twist); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) (finding ALJ erred in failing to explain her disregard of pertinent record evidence).

The ALJ additionally discredited Dr. Hix's opinion based on Ms. Kubiszewski's perceived ability to participate in daily activities, such as cooking, cleaning, washing dishes, and doing laundry. (R. 24-25). While a claimant's ADLs are an appropriate factor for an ALJ to consider, the Seventh Circuit has "repeatedly cautioned that a person's ability to perform daily activities . . . does not necessarily translate into an ability to work full-time." *Roddy v. Astrue*,

705 F.3d 631, 639 (7th Cir. 2013). Similarly, when an ALJ considers a claimant's activities, they should consider not only what the claimant does, but also how the claimant goes about performing those activities and what effect the activities have on the claimant. *Craft*, 539 F.3d at 680. In this case, the ALJ heeded neither of these instructions. For instance, the ALJ provided no basis for her conclusion that somehow a person's ability to cook, clean, wash dishes, or do laundry is indicative of that person's ability to twist or to perform full-time work. Moreover, the ALJ did not factor in the many limitations regarding these activities that Ms. Kubiszewski testified about at the administrative hearing. For example, Ms. Kubiszewski testified that she can only tolerate doing dishes for twenty minutes before needing to stop and let her hands, back, and legs rest. (R. 40). She also told the ALJ that she could only perform, at best, five minutes of food preparation with a knife because her hands go "completely numb" to the point where she cannot even feel the knife in her hands. (R. 40-41). And when she cooks, Ms. Kubiszewski has to continuously "get up and down." (R. 45). "An ALJ cannot disregard a claimant's limitations in performing household activities." *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009); *see also Craft*, 539 F.3d at 680 ("The ALJ ignored Craft's qualifications as to *how* he carried out those activities … Each activity left him exhausted."). Thus, the daily activities upon which the ALJ relied say little about whether Ms. Kubiszewski is physically able to bend, twist, or stretch enough to maintain full-time employment. *Roddy*, 705 F.3d at 639; *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). In other words, the ALJ did not provide the necessary "logical bridge" explaining how Ms. Kubiszewski's limited ability to perform these particular ADLs render her fit for full-time work. *Terry*, 580 F.3d at 475. The ALJ's errors with regard to twisting are particularly significant, because the VE testified at the hearing that a limitation of "no twisting"

would render Ms. Kubiszewski unable to perform the very occupations that the ALJ found to be suitable at step 5. (R. 54-55).

The ALJ committed additional error by failing to include a sit/stand limitation in Ms. Kubiszewski's RFC without explaining the rationale behind that omission. SSR 96-8p mandates that "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." Similarly, SSR 16-3p requires that "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." At the hearing, Ms. Kubiszewski reported that she is "unable to stand and walk for a long period of time" and that she can only sit in an upright chair for about twenty minutes before needing to get up. (R. 41-42). Again, she also testified that she had to "get up and down" while cooking meals. (R. 45). Ms. Kubiszewski also reported to Dr. Houck that she needs to sit down after only fifteen minutes of standing, and Dr. Houck opined that she "may need to take frequent breaks when she is standing and walking, such that she does not have pain." (R. 540-41).

While the ALJ summarized some of this information in her opinion, she made no attempt to explain why Ms. Kubiszewski's sit/stand allegations were "not entirely credible" such that they should not translate into any RFC accommodations. (R. 23). For example, while the ALJ listed evidence of Ms. Kubiszewski's normal muscle strength, sensation, reflexes, stable gait, negative leg raises, and two instances of no back pain as cutting against her claimed limitations and continuous symptoms (R. 23), the ALJ offered no explanation at all as to *how* any of these isolated observations, whether individually or in combination, undermine Ms. Kubiszewski's

8

claim that she needs to frequently alternate between sitting and standing. *See Corral v. Berryhill*, Case No. 16 C 4315, 2017 WL 3070722, at **9-10 (N.D. Ill. July 19, 2017) (remanding where ALJ did not "explain specifically why she was rejecting the sitting/standing limitation itself" and omitted discussion of claimant's allegations that he needed rest throughout the day); *see also Thomas v. Colvin*, 534 Fed App'x 546, 550 (7th Cir. 2013) ("[T]he ALJ's RFC assessment needed to address why [the claimant's] reported limitations were or were not consistent with the evidence in the record."). Without such an explanation, the ALJ's opinion does not contain the necessary "logical bridge" linking her discussion of the medical evidence to her decision to omit a sit/stand limitation from the RFC. *Terry*, 580 F.3d at 475.

The ALJ's treatment of Ms. Kubiszewski's use of a cane suffers from the same defects as does the sit/stand issue. The ALJ observed that Ms. Kubiszewski used a cane at the hearing, but then apparently discredited the use of that cane solely because "it was not prescribed." (R. 24). The ALJ again omitted any explanation as to: (1) the import of the cane's over-the-counter status as opposed to being prescribed; and (2) how or whether the RFC's limitations account for Ms. Kubiszewski's need for a cane. This is especially problematic given Dr. Houck's observations regarding Ms. Kubiszewski's ambulation: her gait is slow without a cane, but stable with a cane; without the cane, she can tandem walk only for two steps; and that she can "maintain good balance *while ambulating with an assistive device* and carrying a weight of less than 10 pounds." (R. 540) (emphasis added). Ms. Kubiszewski also had a history of falls and purchased the cane because she "could no longer walk freely like [she] used to" and would "fall all the time." (R. 39). The ALJ noted that Ms. Kubiszewski presented to Dr. Houck with a "slow, but stable gait," but did not consider whether that stable gait depends on the use of the cane itself, thereby ignoring the majority of the evidence cited here. (R. 23). Indeed, Dr. Houck found that Ms.

9

Kubiszewski's gait was stable *with* a cane, not without one. (R. 540). Here too, the ALJ failed to provide the requisite "logical bridge" linking Ms. Kubiszewski's reliance on a cane with the limitations assessed in the RFC. *See Thomas*, 534 Fed. App'x at 550 (remanding where ALJ ignored evidence in the record demonstrating claimant's need for a cane, thereby failing to provide the logical bridge between the evidence and the ALJ's conclusions).[2]

**B.      Steps 4 and 5**

Ultimately, without the RFC determination being supported by substantial evidence, the Court is unable to rely on the ALJ's determination that Ms. Kubiszewski is capable of performing past work (step 4) and other work (step 5). Stated another way, in deciding what work Ms. Kubiszewski is capable of performing, the ALJ relied on the VE's testimony, which in turn, relied on the ALJ's hypothetical questions that incorporated the inadequately supported RFC determination.

The law requires the ALJ to incorporate into the hypotheticals those impairments and limitations that the ALJ accepts as credible. *See Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007). Here, the ALJ's insufficiently supported RFC findings led the ALJ to ask hypotheticals of the VE which omitted Ms. Kubiszewski's claimed (and potentially credible) limitations caused by her back problems. Therefore, the VE's testimony cannot be relied upon as an accurate indicator for the type of work that Ms. Kubiszewski is capable of performing. *See Young v.*

---

[2] The Court notes that it is not persuaded by Ms. Kubiszewski's argument that the ALJ failed to address her purported chronic diarrhea. [DE 18 at 11] First, the ALJ entertained questions at the hearing as to whether Ms. Kubiszewski had problems with incontinency, to which Ms. Kubiszewski clarified that she only encountered incontinency of her bladder, not her bowels. (R. 47). Second, the ALJ explained that, "while the recorded documents [Ms. Kubiszewski's] gastrointestinal problems, [she] reported that these problems cause no significant impact on her day." (R. 20). Indeed, the evidence cited by the ALJ here notes that Ms. Kubiszewski "states that she is getting along fine with her bowels working. This way. [sic]," referring to the fact that she experienced diarrhea 4-12 times per day between 2013 and 2015. (R. 569).

*Barnhart*, 362 F.3d 995, 1003-05 (7th Cir. 2004) (The ALJ must determine the claimant's RFC before performing steps 4 and 5 because a flawed RFC typically skews questions posed to the VE.); SSR 96-8p. Thus, until the hypotheticals presented to the VE include the functional limits that the ALJ accepts as credible, and the ALJ adequately explains the claimant's actual limitations and resulting RFC based on the relevant medical evidence, 20 C.F.R. §§ 404.1545, 404.1546(c), steps four and five cannot be affirmed in this appeal. *See Young*, 362 F.3d at 1003-05. This is especially true here, as the ALJ improperly discounted Dr. Hix's medical opinion that Ms. Kubiszewski could not twist (discussed above), while the VE testified that a limitation of no twisting would eliminate the occupations the ALJ found to be available for Ms. Kubiszewski (patcher, inspector, interviewer). (R. 54-55).

**C.     Unemployment Benefits**

The ALJ determined that Ms. Kubiszewski's impairments could reasonably be expected to cause some of her alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible.[3] (R. 23). In so finding, the ALJ discounted Ms. Kubiszewski's claimed inability to work based in part on the fact that Ms. Kubiszewski received unemployment benefits in 2012 and 2013. (R. 24). Although she noted that the receipt of unemployment insurance benefits does not itself preclude the receipt of Social Security disability benefits, the ALJ concluded that:

> Nevertheless, the fact that the claimant apparently claims an ability to work when applying for another form of government benefits, while currently alleging an inability to work during the same period of time, brings into question the reliability of the claimant's allegations generally.

---

[3] In 2016, the Social Security Administration issued SSR 16-3p, which supersedes SSR 96-7p. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). SSR 96-7p referred to a claimant's "credibility," but SSR 16-3p removed that term in order to "clarify that subjective symptom evaluation is not an examination of the individual's character." SSR 16-3p. The new SSR was issued after the ALJ's decision in this matter, however, it was only a clarification of the law and not a change in the law. Regardless, under either SSR version, the outcome in this case would be the same.

11

*Id.* This excerpt represents the entirety of the ALJ's explanation regarding unemployment benefits, and based on that one sentence, she "generally" discredited all of Ms. Kubiszewski's allegations. The Seventh Circuit has cautioned, however, that "attributing a lack of credibility to [a claimant's application for and receipt of unemployment benefits] is a step that must be taken with significant care and circumspection. All of the surrounding facts must be carefully considered." *Scrogham v. Colvin*, 765 F.3d 685, 699 (7th Cir. 2014) (remanding where the ALJ did not discuss any circumstantial considerations surrounding claimant's unemployment benefits). The ALJ in this case made no effort to explain her consideration of Ms. Kubiszewski's unemployment benefits with the "care and circumspection" required by *Scrogham*; the ALJ neither questioned Ms. Kubiszewski about her benefits at the hearing, nor explored any potential connection between Ms. Kubiszewski's condition and her need for benefits. The ALJ's shortcomings here provide an independent basis for remand. *See, e.g.*, *Schickel v. Colvin*, No. 14 C 5763, 2015 WL 8481964, at *14 (N.D. Ill. Dec. 10, 2015) (remanding where ALJ singled out claimant's application for unemployment benefits without exploring said application at the hearing).

## CONCLUSION

The remedy for the ALJ's shortcomings is further consideration, not the immediate award of benefits. And so, for the reasons stated herein, the Court **REVERSES** the Commissioner's decision and **REMANDS** this matter to the Commissioner for further proceedings consistent with this opinion.[4]

---

[4] Briefly, on remand, the Court invites the ALJ to explore and clarify any discrepancies in the VE's testimony regarding occasional stooping. At the hearing, counsel for Ms. Kubiszewski asked the VE whether a limitation of occasional stooping would eliminate sedentary work, yet the VE's response as transcribed is muddled and the Court cannot distill its meaning. (R. 58). According to Ms. Kubiszewski, the VE answered in the affirmative, that occasional stooping would eliminate all sedentary work.

12

SO ORDERED.

ENTERED: July 20, 2018

/s/ JON E. DEGUILIO
Judge
United States District Court

---

However, the Commissioner reads the VE's response differently and additionally argues that even if interpreted in Ms. Kubiszewski's favor, the VE's testimony conflicts with the Social Security Regulations on the required amount of stooping in most unskilled sedentary occupations.